*In re* SUPERVISORS OF ELECTION OF EL PASO COUNTY.

(*Circuit Court, W. D. Texas.* October 31, 1890.)

1. ELECTIONS—APPOINTMENT OF SUPERVISORS.
   The refusal of the managers of one political party to co-operate in a petition for the appointment of supervisors of election is no reason for denying the petition, where it appears that the petitioning party used due diligence to secure such co-operation.

2. SAME.
   In the absence of any showing, either in the petition or by evidence, that the persons named in the petition possess the statutory qualifications of supervisors, the petition should be denied.

At Law.

MAXEY, J. A petition, dated October 20, 1890, signed by 23 citizens of El Paso county, was addressed to the chief supervisor of elections of this judicial district, praying for the appointment of supervisors to guard and scrutinize the election to be held in that county on the 4th day of November. The petition is in the following form:

"We, the undersigned citizens of the county of El Paso and state of Texas, and voters in said county, and men of good standing, hereby make it known to the honorable United States circuit judge, for the fifth circuit, and western district of Texas, that we desire to have the approaching election for a representative in congress from the eleventh (11th) congressional district of Texas, to be held on the fourth day of November, A. D. 1890, supervised, so far as the county of El Paso is concerned, guarded and scrutinized according to the provisions of section 2011, United States Revised Statutes, and other provisions of the law. We have the honor to attach hereto a list of supervisors prayed for, marked 'Exhibit A.' "

The paper marked "Exhibit A" begins with this statement:

"Accompanying our petition this day, the 20th of October, A. D. 1890, presented, we have to report to you that S. H. Buchanan and ———, respectively, chairmen of the Republican and Democratic committees of El Paso county, Texas, have agreed upon and selected the following list of supervisors to supervise the election for a representative in congress for the eleventh congressional district of Texas, to be holden on Tuesday, the fourth day of November, A. D. 1890, at all the voting precincts of El Paso county, Texas."

Subjoined to the above statement appears a list of names recommended for appointment as supervisors for 10 election precincts. For each precinct two persons are recommended; one being designated as a Republican, and the other as a Democrat. Immediately following the list of names

is a certificate of S. H. Buchanan, chairman Republican executive committee of El Paso county, in these words:

"I hereby certify that the chairman of the Democratic executive committee is absent from the county, and that I have presented this memorial to Park Pittman and Joseph Magoffin, committeemen from the 1st and.2nd precincts, respectively,.and requested them to act for their said Democratic party; but they decline and refuse to act in the premises. I have therefore suggested the name of a man for each precinct, known to me to be a staunch Democrat, to act for them."

The foregoing petition was filed by the chief supervisor on the 30th of October, and on the same day he made the following indorsement, addressed to the court:

"I respectfully recommend the appointment of the supervisors of election, as prayed for within, for the county of El Paso."

No other papers have been received by the court from the chief supervisor, affecting the application for supervisors for El Paso county, nor has the court received information from that officer in any other form, touching the appointments desired; and it may be added that no evidence is submitted from any source, showing, or tending to show, that the persons suggested for appointment possess the qualifications required by law. At least one of the requisite qualifications is made apparent upon the face of the papers, to-wit, that one of the persons named for each precinct is a Republican and the other a Democrat. But in other essential particulars it will be observed, from an inspection of the statute, neither the papers submitted nor evidence *aliunde* furnish any information whatever to the court.

The question, then, suggesting itself to the court is, should the appointments be made? The chairman of the Republican committee, prior to the date of forwarding the petition to the chief supervisor, used due diligence, as manifested by his certificate, to secure the co-operation of the managers of the Democratic party; and the failure of the latter party to join in a recommendation for the appointments affords no ground for withholding from the petitioning party the protection and benefits of the statute. If the law were otherwise construed, it would be within the power of one political party by passive indifference to absolutely nullify and abrogate its provisions. But laws can only be repealed by that department of the government which 'enacted them, and it is the duty of the courts to give them a fair, just, sensible, and reasonable construction, remitting to the legislative department the duty of declaring when they shall cease to exist. Hence, when, in proper cases, a petition which complies with the statute is presented to the court, it then becomes the duty of the court to act upon it, and to make or decline the appointments as the persons recommended possess, or do not possess, the requisite qualifications.

The remaining question is whether appointments should be made, in the absence of all evidence showing that the persons recommended have the qualifications prescribed by the statute. By section 2012, Rev. St., the appointing power is conferred upon the court, and by that section

and section 2028 the qualifications of supervisors are prescribed. The first section referred to reads as follows:

"The court, when so opened by the judge, shall proceed to appoint and commission, from day to day and from time to time, and under the hand of the judge, and under the seal of the court, for each election district or voting precinct in such city or town, or for such election district or voting precinct in the congressional district, as may have applied in the manner hereinbefore prescribed, and to revoke, change, or renew such appointment from time to time, two citizens, residents of the city or town, or of the election district or voting precinct in the county or parish, who shall be of different political parties, and able to read and write the English language, and who shall be known and designated as Supervisors of Election."

"Sec. 2028. No person shall be appointed a supervisor of election or a deputy-marshal, under the preceding provisions, who is not at the time of his appointment a qualified voter of the city, town, county, parish, election district, or voting precinct in which his duties are to be performed."

By express direction of the statute, the appointment must be made by the court, and, by the same authority, the commission must be issued "under the hand of the judge and under the seal of the court." Who, then, but the appointing power should judge of the qualifications of the applicant? Certainly the law does not vest such power exclusively in the chief supervisor, for the duties of that officer in relation to the appointment are of a limited nature. They are defined as follows:

"He shall receive the applications of all parties for appointment to such positions: upon the opening, as contemplated in section two thousand and twelve, of the circuit court for the judicial circuit in which the commissioner so designated acts, he shall present such applications to the judge thereof, and furnish information to him in respect to the appointment by the court of such supervisors of election." Section 2026.

The action of the chief supervisor is not conclusive upon the court. He acts in an advisory capacity, to aid and assist the court in passing upon the qualifications of applicants. The information furnished by the chief supervisor would doubtless be regarded by the court as sufficient to authorize the appointment, and the court would not be inclined to seek information elsewhere, in the absence of evidence showing that the chief supervisor had been misled or deceived by interested parties. When the necessary information is furnished, the court then acts, and either makes the appointment, or declines to make it, as the facts may warrant. Giving this statute a liberal construction, the court would not look to the chief supervisor as the sole source of information affecting the qualifications of applicants, but reliable evidence otherwise submitted should be considered and acted upon. But in all cases there should be evidence, whether obtained from one source or the other, showing that applicants or persons recommended possess the statutory qualifications as supervisors. In the case now before the court, evidence of qualifications is wholly wanting. The petition is silent upon the point, and the court is not informed by evidence *aliunde* that the persons whose appointments are sought possess the qualifications required by law. The appointments are therefore declined, and an order will be entered accordingly.